JUSTUS A. CHESLEY and another *vs.* CHARLES A. DE GRAFF and another.

July 12, 1886.

**Logs and Logging—Driving Intermingled Logs beyond Destination—Compensation.**—Whoever undertakes to float logs in the Mississippi river, or its tributaries, does so subject to the common right of other log-owners to a like use of the stream, and to the risk of their being intermingled with the logs of other owners, and also subject to the risk of their being transported beyond the intended place of destination, unless suitable precautions are taken, or there exist suitable facilities, natural or artificial, for separating and stopping them. And, where logs belonging to one person are so intermingled with those of other owners that they cannot be conveniently separated till they reach a particular place, such other owners may drive them, in connection with their own logs, to such place, and recover reasonable compensation therefor, under the provisions of Gen. St. 1878, c. 32, § 78, notwithstanding such logs were required by the owner thereof to be left at an intermediate point.

**Same—Lien for Services.**—The right to enforce a lien under the statute for such services is limited to the amount claimed in the account therefor filed with the surveyor general.

Appeal by defendants from a judgment of the district court for Anoka county, where the action was tried by *Young, J.*, without a jury.

*Chas. D. Kerr,* for appellants.

*Hammons & Hammons*, for respondents.

VANDERBURGH, J.   During the months of April and May, 1884, the plaintiffs caused to be driven out of a tributary of Crow Wing river, in this state, a large quantity of pine logs, amounting to about 2,000,-000 feet.   At the same time, and higher up the stream, the defendants had a drive of about 4,000,000 feet of logs, which they intended to have boomed at Motley, about 50 miles below, on the same river, to be there manufactured.   These logs were floated down, and became intermingled with the plaintiffs' logs, and were jointly driven by the employes of both parties for about four days, when defendants' men were withdrawn from the drive, and sent below to prepare dams and sluices to separate their own logs, and stop them at Motley; and they also directed the plaintiffs to separate and leave their logs above that point.   But this the plaintiffs were unable to do, as the court finds, except to the amount of about 300,000 feet, which plaintiffs left along the banks of the river.   The court also finds that "plaintiffs continued to drive their own logs, and such of defendants' logs as were not so separated and left, without any assistance from defendants' crew, after the latter had been taken off as above stated, until the drive had about reached Motley, a distance of about thirty-six miles; when defendants, finding that their logs could not be separated from plaintiffs' logs and stopped at Motley, drove up such of their logs as had been separated and left, joined the plaintiffs in the general drive, on or about June 23d, and so continued until they reached the Mississippi river."   The plaintiffs bring this action to enforce a lien for the value of their services in driving defendants' logs that remained intermingled with their own during the absence of plaintiffs' employes from the drive, under Gen. St. 1878, c. 32, § 78.

1. The first and principal question in the case is whether, under such circumstances, the plaintiffs are entitled to recover compensation for driving defendants' logs, though intermingled with their own, since the result was that they were taken beyond the place where defendants required them for manufacture, and contrary to their purposes and wishes.   Whoever undertakes to float his logs in the Mississippi river, or any of its tributaries, does so subject to the common right of other log-owners to a like use of the stream, and to the risk of their

being intermingled with other logs or timber; and he does so also subject to the risk of their being transported beyond the intended place of destination, unless suitable precautions are taken or provisions are made for guarding against such contingency. That is to say, he must either prevent his logs from mingling with others, or there must be suitable facilities, natural or artificial, for separating and stopping his logs. Otherwise they must necessarily move on in the common drive, except as they may be conveniently left, as in this instance, on shoals or the banks of the stream. Each owner must submit to the inconveniences incident to the exercise of the common right by others to use the stream, and to separate and take logs out of the stream; but, in order to be entitled to require the whole mass of logs in a common drive to be delayed for the accommodation of one who desires to separate his logs, there must be a suitable opportunity, or place, and appliances to render such work reasonably practicable and convenient.

The findings of the court are supported by the evidence, and it sufficiently appears that, after the logs became intermingled, it was impracticable to separate and stop the bulk of the defendants' logs at or above Motley, very likely for the want of suitable booms, dams, and sluices. They must necessarily, therefore, have been driven to the Mississippi river with plaintiffs' logs; and whatever services plaintiffs rendered in driving the logs of defendants they are entitled to be compensated for, under the statute, though it would have been more advantageous to the defendants to have stopped their logs above Motley, and though they might have made a more favorable disposition of them had they not been intermingled and driven in common with plaintiffs' logs. It is not found, nor does it appear, that the intermingling of the logs, or the failure to separate them, is attributable to the fault or negligence of plaintiffs. Under the circumstances, we discover no reason why they should not recover in this action.

2. The value of the services so rendered for the defendants is found by the court to be $925, and judgment was accordingly ordered and entered for that sum, and interest; the full amount thereof being also adjudged to be a lien on the logs of defendants. But the sum claimed for the same services in plaintiffs' verified account for a lien

v.35m—27

is $850. There is also included in such account the further claim of $224 for moneys advanced. This item is not, however, passed upon or allowed by the trial court. Plaintiffs' lien must therefore be limited to the amount claimed for the particular charge of service claimed, with interest. Plaintiffs were entitled to a personal judgment against defendants for $925 and interest, as entered, but were entitled to a lien only for the sum of $850 and interest.

The judgment is modified accordingly.